IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| MARK SPLONSKOWSKI,<br><br>*Plaintiff*,<br><br>v.<br><br>ERIKA WHITE, in her official capacity as State Election Director of North Dakota,<br><br>*Defendant*,<br><br>and<br><br>LEAGUE OF WOMEN VOTERS OF NORTH DAKOTA,<br><br>*Proposed Intervenor-Defendant*. | Case No. 1:23-cv-00123-DMT-CRH<br><br>**MOTION TO INTERVENE** |

**LEAGUE OF WOMEN VOTERS OF NORTH DAKOTA'S
MOTION TO INTERVENE**

**INTRODUCTION**

Proposed Intervenor-Defendant the League of Women Voters of North Dakota ("LWVND") respectfully moves to intervene in this matter as of right pursuant to Federal Rule of Civil Procedure 24(a)(2). In the alternative, LWVND requests leave to intervene by permission under Rule 24(b)(1). A proposed Motion to Dismiss is attached as Exhibit 1. Proposed Intervenor-Defendant has conferred, through counsel, with the above-named parties regarding their positions on this motion. Defendant White declined to take a position on the motion before having an opportunity to review the briefing. Plaintiff opposes the motion.

1

**FACTUAL BACKGROUND**

LWVND is a North Dakota-based membership organization dedicated to promoting civic engagement and protecting democracy through advocacy, voter education, and voter assistance. Ex. 2, ¶ 1 (Decl. of B. Headrick). Part of LWVND's mission is to expand access to voting and to ensure its members and the members of the broader communities it serves have access to reliable, convenient, and effective means of casting a ballot. *Id.* LWVND's work includes promoting various means of voting; assisting members and others in requesting absentee ballots if necessary; providing information to the community about upcoming elections and voting options; and encouraging members and other eligible voters to get out and vote, including by utilizing mail-in voting. *Id.* ¶ 2. LWVND has 133 members across the state, many of whom vote regularly by mail and intend to do so in future elections, including Barbara Headrick, President of LWVND. *Id.* ¶¶ 4, 6. Nine of LWVND's members live in vote-by-mail counties. *Id.* ¶ 4. If Plaintiff's suit were to succeed, LWVND's members would be subject to disenfranchisement based solely on when their ballot is received rather than when it is cast and will face uncertainty and confusion about when to return their ballots in order to be sure they are counted. *Id.* ¶¶ 4-8.

Under North Dakota law, counties may conduct elections by mail. N.D. Cent. Code 16.1-11.1-01. In those instances, mail ballot application forms are mailed to all qualified voters. N.D. Cent. Code 16.1-11.1-02. Additionally, any North Dakota voter may request an absentee ballot via an application form. N.D. Cent. Code 16.1-07-01; 16.1-07-06. When voting by mail or absentee ballot, the ballot must be postmarked by the day before Election Day in order to be counted. N.D. Cent. Code 16.1-07-09; 16.1-11.1-07. County canvassing boards meet on the thirteenth day following the election to conduct a final count of all votes received. N.D. Cent. Code 16.1-15-17. A ballot voted and returned by the voter by the deadline will still be counted if it is received by the

canvassing board prior to the date of the canvass so long as the ballot is postmarked or "otherwise officially marked" by the U.S. Postal Service or other mail delivery system by the day before Election Day. N.D. Cent. Code 16.1-07-09; 16.1-11.1-07. LWVND educates members and other voters in accordance with these laws while also recognizing—and celebrating—Election Day as the first Tuesday after the first Monday in November (for the federal general election), as established by federal law. Ex. 2, ¶¶ 1-3, 9-10.

On July 5, 2023, Plaintiff filed the present action against Defendant Erika White in her official capacity as State Election Director. ECF No. 1 ("Compl."). Plaintiff alleges that North Dakota's law, which requires that lawfully cast mail-in ballots be counted when received during the thirteen days between Election Day and the date on which the canvasing board meets, conflicts with federal law establishing Election Day. *Id.* Plaintiff seeks to enjoin Defendant White from accepting or counting any ballots received after Election Day, or from instructing or training North Dakota election officials to do so. *See id*. Granting Plaintiff's requested relief would cause confusion and potential disenfranchisement for LWVND members and other community members who understand that under North Dakota law, their ballots will be counted if lawfully cast before Election Day; would undermine LWVND's voter education efforts; and would require LWVND to divert substantial resources to attempt to alleviate voter confusion and ensure lawfully cast ballots are timely received and counted. Ex. 2, ¶¶ 4-10. On August 7, 2023, Defendant White filed a Motion to Dismiss. ECF No. 10 (Def. Mot. to Dismiss).

LWVND seeks to intervene as a Defendant in this matter to ensure its interests and the interests of its members and the communities it serves are properly and fully defended. LWVND is entitled to intervene as of right under Rule 24(a) as the present litigation poses a significant threat to its interests, and those interests are not adequately represented by the existing Defendant

in this case. In the alternative, LWVND requests this Court grant permissive intervention pursuant to Rule 24(b).

## ARGUMENT

**I.      LWVND Is Entitled to Intervene as a Matter of Right.**

Intervention as of right is governed by Fed. R. Civ. P. 24(a), which provides in relevant part:

> On timely motion, the court must permit anyone to intervene who:
> . . .
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24.

Before a court may reach the question of whether a potential intervenor meets the requirements of Rule 24(a), it must first determine that the applicant has Article III standing. *Mausolf v. Babbitt,* 85 F.3d 1295, 1300 (8th Cir. 1996). Once standing is established, Rule 24(a)(2) requires that an applicant demonstrate that: (1) its motion is timely; (2) it has a recognized interest in the subject matter of the litigation; (3) that interest might be impaired by the disposition of the litigation; and (4) its interest is not adequately represented by the existing parties. *United States v. Union Electric Co.*, 64 F.3d 1152, 1160-61 (8th Cir. 1995). If an applicant has standing and meets each of these four requirements, then it "must" be allowed to intervene. Fed. R. Civ. P. 24(a). Rule 24 must be construed "liberally, with all 'doubts resolved in favor of the proposed intervenor.'" *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 974 (8th Cir. 2014), *quoting Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999). As demonstrated below, LWVND has standing and satisfies all four of the factors required for intervention as of right under Rule 24(a)(2).

4

A. **LWVND has standing to intervene in this case.**

A proposed intervenor-defendant must allege "facts showing the familiar elements of Article III standing," namely, that it would suffer a concrete, particularized injury to a legally protected interest were plaintiff's requested relief granted. *ACLU of Minn. v. Tarek ibn Ziyad Academy*, 643 F.3d 1088, 1092-93 (8th Cir. 2011). An intervenor's injury is sufficiently "imminent" if it is likely to occur upon the success of the plaintiffs' lawsuit. *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1024–25 (8th Cir. 2003). An organization like LWVND can establish standing either because of imminent harms to its members, or because of harm to the organization itself. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975). Here, LWVND can demonstrate both.

An organization has "associational" standing when 1) its members would otherwise have standing to sue in their own right, 2) the interests it seeks to protect are germane to the organization's purpose, and 3) the legal claims do not require the participation in the suit of each individual member. *See Kuehl v. Sellner*, 887 F.3d 845, 851 (8th Cir. 2018) (*quoting Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). Because LWVND members would otherwise be individually harmed if Plaintiff's suit succeeds; because ensuring that its members are not denied the right to vote, that legally voted ballots are properly and uniformly counted and that election information is properly conveyed to the public are core to LWVND's mission; and because individual LWVND members need not participate in this suit, the requirements of associational standing are met.

As part of the inquiry into the first associational standing prong, the Eighth Circuit considers both whether the individuals represented by the organization are in fact "members" and whether specific members can allege concrete harm. *See Missouri Protection & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 809 (8th Cir. 2007). Here there is no question that LWVND is a

membership organization. *See* League of Women Voters of North Dakota, "Become a Member," www.lwvnd.org/membership (last accessed Aug. 10, 2023) ("Our League is member-powered and member-supported . . . [M]embership supports" programs including "public information campaigns" and "get-out-the-vote campaigns."); *see also* Ex. 2, ¶ 3. Additionally, individual members who routinely submit mail-in ballots face concrete and imminent harm that would result if Plaintiff's suit were to succeed. *Id.* ¶¶ 4-8. For example, LWVND member and President Barbara Headrick has voted via absentee ballot since 2020 and intends to continue voting via absentee ballot, including in 2024. *Id.* ¶ 6. Ms. Headrick regularly mails her ballot approximately one week prior to Election Day, which allows her to take into account information about candidates and issues that come to light in the lead up to Election Day. *Id.* ¶¶ 6-7. Ms. Headrick and other LWVND members make use of mail-in voting as provided for under North Dakota law, with the understanding that their ballots will be counted if mailed before the statutory deadline. *Id.* ¶ 8. Indeed, LWVND's voter education efforts emphasize the uniform deadline for postmarking mail ballots because LWVND has been told repeatedly by members and other citizens about issues mailing ballots, particularly in the small population counties that rely on mail in voting but have limited rural mail services and limited access to post offices. *Id.* ¶ 9. While this was particularly true in 2020 when many North Dakota citizens voted by mail during the pandemic and many places did not provide ballot dropboxes, mail issues continue to be a concern for voters who rely on mail-in voting. *Id.*

As such, requiring that mail-in ballots be *received* by the Canvassing Board by Election Day as Plaintiff demands, *see* Compl. at 9, instead of postmarked by the day prior to Election Day, as current law allows, would condition LWVND's members' right to vote on the uncertain whims and unanticipated delay of the U.S. Postal Service, require absentee and mail-voters to cast their

ballots well in advance of election day, depriving them of the ability to allow late-breaking information related to candidates and issues to inform their votes, and result in confusion and arbitrary disenfranchisement of LWVND's members and other community members.[1] Indeed, without the safe harbor provided by the uniform deadline, two individuals in different parts of the state could mail their ballots at the same time, and whether the ballot would be counted would depend solely on how quickly it made its way through the mail to the relevant county elections office. This sort of arbitrary disenfranchisement is precisely the kind of concrete injury to members sufficient to demonstrate associational standing, which goes beyond statistical probability or general description of LWVND membership as a whole, but instead identifies the way that specific members will be harmed should Plaintiff's attempt to judicially rewrite North Dakota election law succeed. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 601-02 (8th Cir. 2022).

The second and third associational standing prongs are easily met. Uniform voting deadlines, clearly communicated voting laws, and accurate vote tabulation are not only "germane" to LWVND's purpose, but core to the organization's mission. *See League of Women Voters of S. Dakota v. Noem*, No. 4:22-CV-04085-RAL, 2022 WL 17581792, at *9 (D.S.D. Dec. 12, 2022) (voter education and organizing activities germane to purpose of LWV). And because the harm is the same to all members wishing to vote by mail—and would be equally addressed by dismissing Plaintiff's suit—individual members need not participate in this lawsuit. The relief sought by LWVND is simply the dismissal of Plaintiff's suit, and the continued enforcement of North Dakota election law, which would remedy the harm to all members. This outcome is not particularized to any member, does not require individualized proof, and consequently does not require the

---

[1] Such disenfranchisement is not speculative. According to Plaintiff's complaint, over 200 properly cast ballots in the 2022 election would have been disregarded if Plaintiff's theory were accepted. Compl. ¶ 35.

7

participation in this suit of individual members. *See Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022 (8th Cir. 2012); *Pharm. Rsch. & Manuf'rs of Am. v. Williams*, 64 F.4th 932, 948 (8th Cir. 2023).

Second, in addition to having standing on behalf of its members, LWVND also has standing in its own organizational capacity. Organizational standing is established where an organization 1) would suffer a "concrete and demonstrable injury to the organization's activities," that is 2) "fairly traceable" to the challenged action. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Ark. ACORN Fair Hous., Inc., v. Greystone Dev. Co.*, 160 F.3d 433, 434 (8th Cir. 1998). In this case, were Plaintiff's claim to succeed, LWVND would have to expend time and resources educating members and the public about changes to ballot submission deadlines, change their communication and education strategy around mail-in voting, and otherwise abandon or reorient their planned activities in order to address a change in how North Dakotans' mail ballots would be accepted and counted. Ex. 2, ¶¶ 8-10. LWVND would also have to divert additional resources to get out the vote ("GOTV") and education efforts to ensure members and community members mail their ballots with sufficient time to ensure they are received by Election Day, or find alternative means to cast their ballots. *Id.* ¶ 10. Moreover, this diversion of resources would require LWVND to divert resources away from, and in some cases forgo entirely, other organizational priorities, such as organizing voter forums, maintaining the League's Vote411.org resource, and recruiting poll observers. *Id.* ¶ 10. This represents a concrete and demonstrable injury to LWVND's organizational aims and planned election activities that goes far beyond mere "abstract social interests." *See Nat'l Fed'n of Blind of Mo. v. Cross*, 184 F.3d 973, 979-80 (8th Cir. 1999). Indeed, "[i]t is well-established that an organization has standing in its own right to challenge an election law when it expends or diverts resources to educate voters

about the new law or assist them in complying with the new law." *Spirit Lake Tribe v. Jaeger*, No. 1:18-CV-222, 2020 WL 625279, at *4 (D.N.D. Feb. 10, 2020) (citing multiple cases). That is precisely what LWVND would be required to do if Plaintiff's suit were to succeed, and LWVND were forced to expend significant time and resources to educate members and others in the community about the elimination of a standardized deadline by which absentee ballots must be submitted in order to be counted. This activity would represent a drain on LWVND's limited resources sufficient to establish a concrete injury. *See Nat'l Fed'n of Blind of Mo.*, 184 F.3d at 979.

The injuries faced by LWVND would be actual and significant, would flow directly from the remedy Plaintiff seeks, and would be redressable by a contrary ruling from this Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). LWVND thus satisfies all requirements for Article III standing as intervenor-defendants.

### B. LWVND's motion for intervention is timely.

The motion here is timely. Timeliness is determined based on the totality of the circumstances. *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993). Factors that are of particular relevance in analyzing timeliness include: (1) the extent the litigation has progressed at the time the motion to intervene is filed; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for any delay by the proposed intervenor in seeking intervention; and (4) to what extent other parties may be prejudiced if intervention is permitted. *ACLU of Minn.*, 643 F.3d at 1094. Here, there is no delay, as LWVND has filed this Motion shortly after becoming aware of this litigation—less than two months after the Complaint was initially filed, and within 11 days of Defendant filing her motion to dismiss. No discovery has occurred, and there is no formal scheduling order in place.

The Eighth Circuit has granted intervention where significantly more time had elapsed between the filing of a complaint and the motion for intervention. In *Mille Lacs*, the Eighth Circuit found an applicant's motion timely where it was filed eighteen months after the initial complaint was filed, concluding that although "a substantial time [had] passed between the commencement of the suit and the [applicants'] motion to intervene," the parties had "not yet even exchanged discovery requests," and so existing parties were not prejudiced. 989 F.2d at 999. Far less time has passed since this case was initiated than in *Mille Lacs* and the litigation is at a similar stage. Granting the motion to intervene at this stage of the case would not delay a future trial or any other proceedings, nor would it cause prejudice to any party.

Additionally, Plaintiff has not filed a motion for preliminary injunction or any other pleadings beyond the initial complaint that could constitute "progress" in the litigation rendering a motion to intervene untimely under the Eighth Circuit's *Mille Lacs* test. Because this litigation is still in its initial stage, granting LWVND's Motion to Intervene, would also not prejudice any of the parties by requiring them to "cover the same ground again." *U.S. Bank Nat. Ass'n v. State Farm Fire & Cas. Co.*, 765 F.3d 867, 870 (8th Cir. 2014). Instead, considering the "early stage" of the litigation, LWVND's motion to intervene and accompanying proposed motion to dismiss, can be considered concurrently with the Defendant's motion to dismiss, and thus will not prejudice the existing parties. *See Am. Med. Ass'n v. Stenehjem*, No. 1:19-CV-125, 2019 WL 10920631, at *4, *6 (D.N.D. Nov. 26, 2019) (granting intervention where party moved to intervene approximately two months after lawsuit was filed and "at a time when the litigation ha[d] consisted only of Plaintiffs' complaint, Defendants' answers, and briefing on Plaintiffs' motion for preliminary injunction"). The current litigation is at an even earlier stage than in *American Medical Association*, and LWVND's Motion to Intervene is timely.

### C. LWVND has direct and recognized interests in the present litigation.

Under Rule 24(a)(2), applicants must be granted intervention when they "have an interest in the subject matter of the litigation… that is 'direct,' as opposed to tangential or collateral… and 'recognized,' [meaning both] substantial and legally protectable." (citations and internal quotations omitted). *Union Electric Co.*, 64 F.3d at 1161; *see also United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 839 (8th Cir. 2009).

While this inquiry is separate from standing, the requirements to demonstrate an injury in fact for the purposes of standing closely track those necessary to show a direct and recognized interest in the subject of litigation under Rule 24(a)(2). *See Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999); *Mausolf*, 85 F.3d at 1299–1300. Indeed, LWVND is aware of no instance in which a court in this Circuit has found that would-be intervenors faced injury in fact sufficient to demonstrate standing but lacked a direct and recognized interest justifying mandatory intervention.

For the reasons outlined *supra*, LWVND has a legally protectable interest in ensuring that North Dakota law is followed and that absentee ballots post-marked before Election Day are properly counted if received during the thirteen-day canvassing period following Election Day. The interests of LWVND and its members are directly implicated by this litigation, which would impact whether and how many absentee votes are counted, and the efforts LWVND would have to expend to educate North Dakotans about any change in the rules regarding which absentee ballots are counted. If Plaintiff's relief were granted, LWVND and its members and broader community would suffer immediate confusion, imminent strain on limited resources, and possibly irreversible disenfranchisement. LWVND therefore meets this requirement for mandatory intervention.

LWVND also establishes this prong because it has been deeply involved in advocating for and educating voters about North Dakota's absentee voting system. For example, the League's Vote411.org web resource contains detailed information about requesting an absentee ballot, and the deadlines to return it. *Vote411: North Dakota - Absentee Ballot Process*, www.vote411.org/north-dakota (last accessed Aug. 15, 2023). Courts within the Eighth Circuit may consider a party's prior involvement in and commitment of resources to the issues implicated by a suit in determining whether this prong is met. *See Animal Protection Inst. v. Merriam*, 242 F.R.D. 524, 528 (D. Minn. 2006), citing *Mausolf*, 85 F.3d at 1302 (finding that "a party has satisfied its minimal burden of demonstrating a significant interest…when it has a long-standing stake in the subject of litigation"). In *Mausolf*, the Eighth Circuit found that an environmental organization satisfied Rule 24(a)'s interest requirement and thus could intervene to vindicate its interest in restricting snowmobiling in a Minnesota National Park where it had "consistently demonstrated its interest in the Park's well-being…and has worked hard over the years, in various proceedings, to protect that interest." 85 F.3d at 1302.

To the extent that an intervenor's active demonstrations of interest may bolster its ability to satisfy this prong of Rule 24(a), LWVND has made such a demonstration through active and ongoing advocacy and education efforts about voting in general, and about absentee voting in particular, as well as the regular use of mail-in voting by LWVND members in past North Dakota elections.

D.     **LWVND's interests will be directly impaired by this litigation.**

To establish the potential impairment of an interest, an intervenor "need not show that, but for its intervention, its interest '*would* be' impaired by the operation of res judicata, collateral estoppel, or stare decisis." *Kansas Public Employees Retirement System v. Reimer & Koger*

12

*Associates, Inc.*, 60 F.3d 1304, 1308 (8th Cir. 1995) (internal quotations omitted) (emphasis added). Rather, it must demonstrate "only that its interest '*may* be' so impaired." *Id*; *see also Jenkins by Jenkins v. State of Mo.*, 78 F.3d 1270, 1275 (8th Cir. 1996) (emphasis added).

Here, LWVND's interests are in ensuring members and other voters in the community can easily vote, and that all lawfully cast ballots will be counted. LWVND's voter engagement and education activities focus on what voters can or must do in order to cast their votes, and LWVND's efforts in this regard are informed by North Dakota's election law. Plaintiff seeks to eliminate North Dakota's standardized deadline for submitting absentee ballots. If this request were granted, LWVND's interests in ensuring that its members and community members are able to vote by mail in the lead up to Election Day will be directly impaired, resulting in the possible disenfranchisement of hundreds of North Dakota voters each election cycle—an outcome directly opposed to LWVND's interests.

### E. The existing parties do not adequately represent LWVND's interests.

Courts "determine the adequacy of representation primarily by comparing the interests of the proposed intervenor with the interests of the current parties to the action." *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992). Courts do not lightly assume one litigant can adequately represent the interests of another, except where a special relationship (such as *parens patraie*) exists. *See, e.g., Chiglo v. City of Preston*, 104 F. 3d 185, 187 (8th Cir. 1997). Where no special relationship exists, this "criterion is easy to satisfy, and the would-be intervenor faces a 'minimal burden' of showing that its interests are not adequately represented by the parties." *Mausolf*, 85 F.3d at 1303; *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (the burden of showing inadequate representation under FRCP 24 "should be treated as minimal").

Because there is no such special relationship between LWVND and Erika White in her official capacity as the State Election Director, LWVND's burden in showing that its interests are not adequately represented by existing parties is "minimal." *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 738 F.2d 82, 84 (8th Cir. 1984). This minimal burden is met here. Although Defendant White and LWVND will presumably both defend the legality of North Dakota's election law, the precise nature and weight of their respective interests differ. *Planned Parenthood of Minn. v. Citizens for Community Action*, 558 F.2d 861, 870 (8th Cir. 1977) (intervention appropriate where the interests of proposed intervenor and current party, "while not adverse, are disparate," even though both sought same legal goal).

As explained above, LWVND's interest is in ensuring that its members and other voters in the community are provided clear deadlines and administrable procedures for voting by mail, and that if otherwise-qualified voters cast and mail their absentee ballots by the day before Election Day, they can be reasonably sure their ballots will be counted. LWVND also has an interest in not redirecting resources that would be otherwise spent on different voter engagement and education efforts toward a campaign to inform members and the public about a change in the law that would require absentee voters to mail their ballot some (unknown) amount of time in advance of Election Day. Defendant White shares some of these interests in that she, as a North Dakota state official, has a duty "to represent the interests of all . . . citizens," of whom LWVND's members and other absentee voters are a small minority. *Sierra Club*, 960 F.2d at 86. But she has different and additional interests as well, and this divergence alone establishes disparate interests justifying intervention.

Defendant White must balance and consider additional interests that LWVND does not have, and LWVND likewise has interests not shared by Defendant White. In her capacity as

Election Director, Defendant White trains election officials across the state in how to comply with the law and properly canvass ballots as they are received. In other words, her responsibilities lie in part with what happens to a ballot *after* it has been cast. In contrast, LWVND focuses its efforts primarily on what voters must do *before and up to* the moment that they cast their ballots. This distinction is akin to the divergent interests of the parties in *Ubbelohde* where the proposed intervenor had interests only in what occurred downstream in the river at issue, while the existing party had to balance the interests of upstream and downstream river users. 330 F.3d at 1025. In that case, where the existing party had to balance multiple interests, of which the proposed intervenor's interests were just one, intervention was appropriate. *Id.* So too here.

Additionally, a government's obligation to represent all of its citizens frequently requires it "to weigh competing interests and favor one interest over another." *Id*. To the extent that Defendant White will weigh the interests of the canvassing boards and other election officials (however those interests are construed), or the interests of North Dakotans sympathetic to Plaintiff's view of how quickly election results ought to be known,[2] her interests would further diverge from LWVND. LWVND also has interests in preserving resources for voter education efforts and other programmatic activities not directly related to the timing of ballot submission. Defendant White has a different calculus to make about how the interests at stake in this litigation

---

[2]   *See* Compl. ¶¶ 35-40. According to Public Interest Legal Foundation (PILF) President J. Christian Adams, "Election Day has ceased to be a day . . . PILF is fighting to end this lawlessness and restore the day in Election Day." PILF now represents Plaintiff Splonskowski in this suit. Speaking with press, Plaintiff Splonskowski claimed that PILF reached out to him in advance of this litigation "and told me that there were some concerns about North Dakota voting law. *See* Jack Dura, *North Dakota election official challenges mail ballot counting law in Trump-aligned group's lawsuit*, AP (July 7, 2023), https://apnews.com/article/north-dakota-election-lawsuit-mail-ballots-bea674b11b0564f08777354cbccc207d.

compare to the other activities her office undertakes. This represents a further divergence of interests between Defendant White and LWVND.

Because Defendant White cannot adequately represent LWVND's interests, LWVND must be allowed to intervene in order to do so itself.

**II.     Alternatively, LWVND meets the requirements for permissive intervention.**

In the event this Court finds that LWVND has not established the requirements for intervention as of right, LWVND respectfully requests leave of this Court for permissive intervention. "Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the parties." *Id*.

LWVND seeks to intervene in this case for the purpose of addressing the legal issues raised by the Plaintiff, specifically whether North Dakota law mandating that ballots mailed before Election Day be received and counted up to the time of the official vote canvass thirteen days after Election Day conflicts with federal law that mandates a single uniform Election Day nation-wide for federal elections. Under these circumstances, Rule 24(b)'s common question requirement is met.

The second half of the permissive intervention test looks to timeliness and prejudice to the parties. As shown above, LWVND's motion is timely, there would be no prejudice to any party, and LWVND brings a perspective to the litigation distinct from that of the other parties on the common questions of law and fact.

## CONCLUSION

For the reasons stated above, LWVND respectfully requests that its *Motion for Intervention* be granted.

August 18, 2023

/s/ *Sarah Vogel*
Sarah Vogel
ND Bar No. 03964
SARAH VOGEL LAW FIRM
P.O. Box 385
Bismarck, ND 58502-0385
Telephone: (701) 400-6210
sarahvogellaw@gmail.com

Respectfully submitted,

/s/ Molly E. Danahy
Molly E. Danahy
DC Bar No. 1643411
mdanahy@campaignlegal.org
Christopher Lapinig*
CA Bar No. 322141
clapinig@campaignlegalcenter.org
Benjamin Phillips
DC Bar No. 90005450
bphillips@campaignlegalcenter.org
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Ste. 400
Washington, DC 20005
Telephone: (202) 736-2200
Fax: (202) 736-2222

*Counsel for Proposed Intervenor-Defendant*

*\* Based and licensed to practice in California, not in the District of Columbia.*

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all counsel of record via the Court's CM/ECF system.

/s/ Molly E. Danahy
Molly E. Danahy

*Counsel for Proposed Intervenor-Defendant*