# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| MARK SPLONSKOWSKI,<br><br>*Plaintiff*,<br>v.<br><br>ERIKA WHITE, *in her capacity as Election Director of North Dakota*,<br><br>*Defendant,*<br><br>and<br><br>LEAGUE OF WOMEN VOTERS OF NORTH DAKOTA,<br><br>*Proposed Intervenor-Defendants*. | Civil No. 1:23-cv-00123-DMT-CRH<br><br>**[PROPOSED] Motion to Dismiss** |

**LEAGUE OF WOMEN VOTERS OF NORTH DAKOTA'S [PROPOSED] MOTION TO DISMISS**

## INTRODUCTION

Plaintiff Mark Splonskowski, the County Auditor of Burleigh County, North Dakota, seeks declaratory and injunctive relief against Defendant Erika White, in her official capacity as North Dakota Election Director, alleging that North Dakota law accepting absentee ballots postmarked the day before Election Day conflicts with federal law fixing Election Day on one specific day. Because no such conflict exists as a matter of law, Intervenor-Defendant League of Women Voters of North Dakota ("LWVND") respectfully moves to dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiff Mark Splonskowski filed this action on July 5, 2023. ECF No. 1 ("Compl."). As the Burleigh County Auditor, Plaintiff "is responsible for the proper administration of state laws, rules, and regulations concerning election procedures within Burleigh County." Compl. ¶ 13. As part of these responsibilities, "he sits on the county canvassing board, which reviews ballots that arrive after Election Day and certifies the county election results." *Id.*

Defendant Erika White, in her official capacity as the Election Director for North Dakota (the "Director"), is employed by North Dakota "to administer elections and has [been] delegated significant authority . . . to manage and direct North Dakota's elections." *Id.* ¶ 12. The Complaint alleges that she "work[s] closely with North Dakota's 53 counties to ensure uniform election procedures and processes. . . ., including how to properly accept ballots, and which ballots to accept." *Id.*

Intervenor-Defendant LWVND is a North Dakota-based membership organization whose mission includes expanding access to voting and ensuring its members and the members of the broader communities it serves have access to reliable, convenient, and effective means of casting

a ballot. LWVND has 133 members in North Dakota, many of whom rely on mail and absentee voting to cast their ballots, including LWVND President Barbara Headrick.

Plaintiff's complaint contains a single claim: Plaintiff is harmed by an alleged conflict between federal and state law with regard to North Dakota's uniform deadline for accepting absentee and mail ballots.

North Dakota permits any qualified voter to vote via absentee ballot. *Id.* ¶ 18 (citing N.D. Cent. Code § 16.1-07-01). Absentee ballots must be delivered in person before Election Day or, if mailed, postmarked no later than the day before Election Day and received prior to the meeting of each county's canvassing board. *Id.* ¶ 19 (citing N.D. Cent. Code § 16.1-07-09). As county canvassing boards meet "[o]n the thirteenth day following each election," the Complaint alleges that "absentee ballots received up to 13 calendar days after the day of the election shall be counted as if cast and received on or before Election Day." *Id.* ¶¶ 20, 21 (citing N.D. Cent. Code § 16.1-15-17).

In addition to absentee ballots, North Dakota law permits boards of county commissioners to conduct elections by mail ballot, in which case mail ballots must be returned to a designated place before Election Day or, if mailed, postmarked no later than the day before the election. *Id.* ¶¶ 22-23 (citing N.D. Cent. Code §§ 16.1-11.1-01, 16.1-11.1-04).

Plaintiff alleges that, by counting absentee ballots and mail ballots postmarked before Election Day but received after Election Day, North Dakota law conflicts with federal law "fix[ing] Election Day on one specific day." *Id.* ¶¶ 1, 43. Plaintiff further alleges that, faced with this purported conflict, he "must choose which law to enforce when determining whether to certify ballots that arrive after Election Day, and if he chooses incorrectly, he can be subject to a Class C felony for certifying a false canvass of votes, or a Class A misdemeanor for failing to perform a

3

duty as an election official, violating a rule set by the Secretary of State, or knowingly allowing an unqualified individual to vote." *Id.* ¶ 43; *accord id.* ¶¶ 31-34 (citing statutes that impose criminal penalties associated with election offenses).

Plaintiff alleges that, pursuant to 2 U.S.C. § 7 and 3 U.S.C. § 21, the next federal election will take place on November 5, 2024. *Id.* ¶¶ 46-47. In supposed conflict with federal law, Plaintiff alleges that he "will be trained by Defendant to accept and tabulate ballots that come in after Election Day" and that at the meeting of the Burleigh County Canvassing Board set for November 18, 2024, he "will have to make the decision of choosing between conflicting state and federal law, risking violating his oath and incurring criminal penalties." *Id.* ¶¶ 48, 49.

Plaintiff seeks a declaratory judgment that North Dakota's statutes allowing ballots to be received and counted after Election Day violate federal law and injunctive relief enjoining Defendant from "implementing and enforcing" these laws and from "instructing and training" state election officials "to count ballots received after Election Day." *Id.* ¶¶ A-C. If successful, Plaintiff's claim would eliminate the uniform deadline for casting mail and absentee ballots set by North Dakota law and subject voters to nonuniform, arbitrary, and unknown deadlines for mailing their ballots.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain 'sufficient factual matter' to state a facially plausible claim for relief." *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In adjudicating a motion to dismiss, courts "tak[e] all well pleaded factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 961 (8th Cir. 2009) (citation omitted). However, courts "are free to 'ignore legal conclusions, unsupported

conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.'" *Id.* (quoting *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002)).

Allegations about statutory interpretation and preemption are legal conclusions that are entitled to no weight. *See Fife v. Fin. Indus. Regul. Auth., Inc.*, No. 22-750-CV, 2022 WL 17818984, at *1 (2d Cir. Dec. 20, 2022) (noting that "legal conclusions . . . include[e] the interpretation of a federal statute"), *cert. denied*, 143 S. Ct. 2464 (2023); *Doe v. Rausch*, No. 122CV01131STAJAY, 2023 WL 25734, at *5 n.4 (W.D. Tenn. Jan. 3, 2023) ("The amendments are not so much 'factual allegations' as 'legal conclusions' about statutory interpretation."); *GMP Techs., LLC v. Zicam, LLC*, No. 08 C 7077, 2009 WL 5064762, at *3 (N.D. Ill. Dec. 9, 2009) ("[L]egal conclusions are not entitled to any weight . . . ."); *Smith v. Medtronic, Inc.*, No. CIV.A. 13-451, 2014 WL 2547813, at *4 (W.D. La. June 4, 2014) (noting that preemption is "a legal conclusion").

"Dismissal is proper 'if it appears beyond doubt that the plaintiff can prove no set of facts to warrant a grant of relief.'" *Monson*, 589 F.3d at 961 (quoting *Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1060 (8th Cir.)).

## ARGUMENT

Plaintiff effectively seeks to disenfranchise certain North Dakota voters by eliminating North Dakota's uniform deadline for casting mail and absentee ballots, subjecting voters to uncertainty and arbitrary vote denial. His claim is predicated on an alleged conflict between federal and state law that does not exist, as evidenced by the ample legal authority flatly contradicting the legal conclusions in his complaint. Indeed, North Dakota's absentee ballot rules operate in harmony, not conflict, with federal statutes intended to ensure voters are not denied their fundamental right to vote due to their inability to vote in person on election day. Because Plaintiff

has failed to allege an actual conflict with federal law, the Court should dismiss his complaint under Fed. R. Civ. P. 12(b)(6).[1]

**I.     North Dakota's Uniform Deadline for Casting Absentee Ballots Does Not Conflict with Federal Law.**

North Dakota's uniform deadline for casting absentee ballots does not conflict with Federal Law, but rather is a valid exercise of the authority delegated to the state under the Constitution. The Elections Clause provides, "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of ch[oo]sing Senators." U.S. Const. art. I, § 4, cl. 1. Under the Elections Clause, "[s]tates have wide discretion to establish the time, place, and manner of electing their federal representatives." *Bost v. Illinois State Board of Elections*, No. 22-CV-02754, 2023 WL 4817073, at *10 (N.D. Ill. July 26, 2023) (citing *United States v. Classic*, 313 U.S. 219, 311 (1941)). "[A] state's discretion and flexibility in establishing the time, place and manner of electing its federal representatives has only one limitation: the state system cannot directly conflict with federal election laws on the subject." *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000).

Congress has enacted several federal statutes setting a uniform time for federal elections, *see, e.g.*, 2 U.S.C. § 7 (setting Election Day for representatives as "[t]he Tuesday next after the 1st Monday in November, in every even numbered year"); *id.* § 1 (aligning the timing of election of senators with election of representatives); 3 U.S.C. § 1 ("The electors of President and Vice President shall be appointed, in each State, on election day, in accordance with the laws of the

---

[1]     In the alternative, the Court should dismiss the complaint for lack of jurisdiction under 12(b)(1) because the Plaintiff has failed to establish that he is injured by the challenged law. *See* ECF No. 10 ¶¶ 13-21 (Def. Mem. in Support of Mot. to Dismiss).

State enacted prior to election day."). Based solely on Congress's use of the "singular" form of the word "day" in these statutes, Plaintiff alleges that the federal election day statutes require "votes to be tabulated on Election Day." Compl. ¶ 17. Courts have routinely rejected this argument and found instead that the relevant statutes set a deadline by which *voting* must be completed but are silent as to the manner and timeline of counting votes. *Cf. Bost*, 2023 WL 4817073 at *13 ("Plaintiffs consistently—and wrongly—conflate "voting" with "counting votes").

In *Bost*, the U.S. District Court for the Northern District of Illinois dismissed a virtually identical action brought by several plaintiffs under, *inter alia*, 2 U.S.C. § 7 and 3 U.S.C. § 1. 2023 WL 4817073, at *1. Similar to Plaintiff here, the *Bost* plaintiffs challenged a state law that "allows ballots to be received and counted for up to 14 days after Election Day." *Id.* Specifically, the *Bost* "[p]laintiffs allege[d] that the [state law] violates 2 U.S.C. § 7 and 3 U.S.C. § 1 by allowing the state to count votes that are received after Election Day, even if they are postmarked on or before the date of the election or certified before Election Day." *Id.* at *11.

The *Bost* court concluded that the plaintiffs had failed to allege plausible claims, as "the Statute does not contradict 2 U.S.C. § 7 and 3 U.S.C. § 1" and "[n]owhere in the text does the Statute allow ballots postmarked or certified after Election Day to be counted." *Id.* Rather, the challenged state law, the court concluded, "operates harmoniously with the federal statutes that set the timing for federal elections." *Id.* "By counting only [] ballots that are postmarked no later than Election Day, the Statute complies with federal law that set the date for Election Day." *Id.*

Moreover, as the *Bost* court noted, Congress has largely (but not entirely, *see supra* Part II) left regulation of absentee voting, including the timeliness of absentee ballots, to the states. *See, e.g., Bost*, 2023 WL 4817073 at *11 ("There is a notable lack of federal law governing the timeliness of mail-in ballots"). As such, statutes similar to the one challenged here, which allow

for the counting mail-in ballots postmarked on or before Election Day, have been "in place for many years in many states." *Id.* (listing states with similar statutes). Currently, North Dakota is one of nineteen states, plus Washington, D.C., Puerto Rico, and the U.S. Virgin Islands, that accept and count mailed ballots if they are received after Election Day but postmarked on or before Election Day. *See* National Conference of State Legislatures, *Table 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots* (July 12, 2022), https://www.ncsl.org/elections-and-campaigns/table-11-receipt-and-postmark-deadlines-for-absentee-mail-ballots. Yet, as the *Bost* court noted, "Congress has never stepped in and altered the[se] rules" to require that ballots be received on or before Election Day in order to be counted. *Id.* (citing *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 14 (2013)). This is notable given that "[t]he assumption that Congress is reluctant to pre-empt does not hold when Congress acts under that constitutional provision, which empowers Congress to 'make or alter' state election regulations." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 14 (2013). The long history and broad usage of similar deadlines underscores the lack of conflict between the North Dakota laws that Plaintiff challenges and the federal statutes on which he relies.

Courts have rejected Plaintiff's theory that the federal election day statutes set a "singular" day for elections in other contexts as well. In *Bomer*, the Fifth Circuit affirmed a district court decision granting summary judgment against a plaintiff who alleged that three Texas statutes "permit[ting] unrestricted early voting in federal elections[] are preempted by federal election statutes that require that the 'election' of members of Congress and presidential electors occur on federal election day." 199 F.3d at 774. Similar to Plaintiff here, the *Bomer* plaintiff "contend[ed] that the federal statutes, by establishing '*the* day for the election,' contemplate that the entire election, including all voting, will occur that day." *Id.* at 775. The Fifth Circuit rejected his claim,

8

holding that "the plain language of [2 U.S.C. § 7] does not require all voting to occur on federal election day." *Id.* at 776; *see also id.* ("[W]e cannot logically hold that Texas' system of unrestricted advanced voting violates federal law without also finding that absentee balloting—which occurs in every state—violates federal law. . . ."); *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 368 (D.N.J. 2020) (denying motion for preliminary injunction and concluding that the plaintiff was unlikely to prevail on the merits "because the Federal Election Day Statutes do not preempt state law permitting the canvassing of ballots before Election Day"); *Millsaps v. Thompson*, 259 F.3d 535, 549 (6th Cir. 2001) (concluding that Tennessee statutes permitting early voting were not preempted by federal law because "compliance with both Tennessee's Early Voting Statutes and the federal election day statutes does not present 'a physical impossibility'" and finding that "Tennessee law interacts with federal law to form a harmonious system for the administration of federal elections, at least so far as their timing is concerned"); *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1171, 1176 (9th Cir. 2001) (upholding Oregon laws "allowing all voters to vote by mail for a substantial period before election day," citing, *inter alia*, a recently enacted federal statute that "plainly provides for liberality toward absentee balloting").

Unsurprisingly, given these precedents, Plaintiff does not seek to require all voters to cast their ballots on the "singular" Election Day he alleges is set forth by federal statute. And though he baselessly asserts that all votes must be "tabulated on Election Day," Compl. ¶ 17, Plaintiff does not actually seek to compel North Dakota to "tabulate" all ballots on Election Day either—indeed, nothing about the relief he has requested would require North Dakota to do so. Instead, Plaintiff asks this Court to treat Election Day as a "singular" day only with respect to absentee and mail ballots postmarked before Election Day—which he does not dispute are timely cast—returned

9

by mail and received up to 13 days after Election Day. Nothing in the statutes relied on by Plaintiff suggests that this is required by federal law. *See Bost*, 2023 WL 4817073 at *11 (finding similar law "facially compatible with the relevant federal statutes"). Instead, the North Dakota laws challenged here—like the Illinois statutes challenged in *Bost*—in fact "operate[] harmoniously with the federal statutes that set the timing for federal elections." *Id.* at *11.

**II.     North Dakota's Uniform Deadline for Casting Absentee and Mail Ballots Operates in Harmony with Federal Law Creating a Right to Vote Absentee in Federal Elections.**

North Dakota's uniform deadline for casting absentee and mail ballots is not only consistent with the federal statutes relied on by Plaintiff, but also operates in harmony with other federal statutes creating an affirmative right to vote absentee. *See Bomer*, 199 F.3d at 777 ("Congress has not only acknowledged but *required* absentee voting in certain circumstances."). As the *Bomer* court noted, both the Voting Rights Act Amendments of 1970 and the Uniformed Overseas and Absentee Voters Act ("UOCAVA")), set forth affirmative obligations for states to make absentee voting available to certain individuals. Such provisions are designed to prevent the denial or abridgment of the "inherent constitutional right of citizens to vote," 52 U.S.C. § 10502(a)(1), and serve what the *Bomer* court identified as "the important federal objective of reducing the burden on citizens to exercise their right to vote." 199 F.3d at 777.

Under these federal statutes, states must make absentee voting available to military and overseas voters for all federal elections, 52 U.S.C. § 20302(a)(1), and to otherwise eligible voters who will not be physically present in the state for all presidential elections, so long as the voter has "complied with the requirements prescribed by the law of such State or political subdivision providing for the casting of absentee ballots in such election, *id.* at § 10502(c). Such provisions "strongly suggest that statutes like the one at issue here are compatible with the Elections Clause." *Bost*, 2023 WL 4817073 at *11 (noting that the "United States Attorney General often seeks court-

ordered extensions of ballot receipt deadlines to ensure that military voters are not disenfranchised"). Moreover, these provisions suggest that if Plaintiff chooses not to certify absentee ballots cast by otherwise eligible voters who have complied with North Dakota's statutory deadlines, he would be violating not only federal statute but also the fundamental right to vote of military, overseas, and absentee voters.

*   *   *

Contrary to the unsupported legal conclusions raised by the Complaint, the North Dakota laws challenged here do not conflict with federal law. As this entire action is premised on the existence of such a conflict, this action fails to state a claim and must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Intervenor-Defendant respectfully requests that the Court grant this motion and dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6).

August 18, 2023

/s/ *Sarah Vogel*
Sarah Vogel
ND Bar No. 03964
SARAH VOGEL LAW FIRM
P.O. Box 385
Bismarck, ND 58502-0385
Telephone: (701) 400-6210
sarahvogellaw@gmail.com

Respectfully submitted,

/s/ *Molly E. Danahy*
Molly E. Danahy
DC Bar No. 1643411
mdanahy@campaignlegal.org
Christopher Lapinig*
CA Bar No. 322141
clapinig@campaignlegalcenter.org
Benjamin Phillips
DC Bar No. 90005450
bphillips@campaignlegalcenter.org
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Ste. 400
Washington, DC 20005
Telephone: (202) 736-2200
Fax: (202) 736-2222

*Counsel for Intervenor-Defendant*

* *Based and licensed to practice in California, not in the District of Columbia.*

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all counsel of record via the Court's CM/ECF system.

/s/ Molly E. Danahy
Molly E. Danahy

*Counsel for Intervenor-Defendant*
