IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Mark Splonskowski,<br><br>                                  Plaintiff,<br><br>vs.<br><br>Erika White, in her capacity as State Election Director of North Dakota,<br><br>                                  Defendant. | Case No. 1:23-cv-00123 |

ORDER GRANTING MOTION TO DISMISS FOR LACK OF JURISDICTION,
FINDING AS MOOT MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM,
AND FINDING AS MOOT MOTION TO INTERVENE

**INTRODUCTION**

[¶1]    THIS MATTER comes before the Court on a Motion to Dismiss for Lack of Jurisdiction and Motion to Dismiss for Failure to State a Claim filed by the Defendant Erika White ("White") on August 7, 2023. Doc. No. 9. Plaintiff Mark Splonskowski ("Splonskowski") filed a Response on September 5, 2023. Doc. No. 17. The United States filed a Statement of Interest in this case on September 11, 2023. Doc. No. 19. White filed a Reply on September 22, 2023. Doc. No. 25. For the reasons set forth below, White's Motion to Dismiss for Lack of Jurisdiction is **GRANTED** and, in light of this, White's Motion to Dismiss for Failure to State a Claim is **MOOT**.

[¶2]    Also before the Court is a Motion to Intervene as Defendant filed by the League of Women Voters of North Dakota ("the League"). Doc. No. 13. White filed a Response on September 1, 2023. Doc. No. 16. The League filed a Reply on September 8, 2023. Doc. No. 18. Splonskowski filed a Response on September 15, 2023. Doc. No. 23. The League filed a Reply on September 22,

2023. Doc. No. 24. Because the Court concludes Splonskowski lacks standing to bring this lawsuit, the League's Motion to Intervene is **MOOT**.

## BACKGROUND

[¶3]  The facts as alleged in the Complaint are relatively unremarkable. Federal election law fixes the Tuesday after the first Monday in November in every even-numbered year as the date for federal elections. Doc. No. 1, ¶ 15. North Dakota permits mail-in absentee ballots as long as they are post-marked the day before election day and received prior to the county's canvassing board's meeting. Id. at ¶ 19. County canvassing boards in North Dakota meet on the thirteenth day after each election. Id. at ¶ 20. If the absentee ballots in North Dakota are post-marked the day prior to the election day and received by the canvassing board before it meets, that ballot must be counted. Id. at ¶ 21.

[¶4]  Burleigh County Auditor Mark Splonskowski ("Splonskowski") believes North Dakota's process violates federal election law. He claims that by following North Dakota's law he will violate federal law. Conversely, he alleges that by following federal law and only counting ballots cast on election day, he will run afoul of North Dakota's law. According to Splonskowski, following his understanding of federal law will inevitably result in criminal prosecution under North Dakota law because he will have to forego his duty to follow North Dakota election law. See id. at ¶¶ 31-34. Here, Splonskowski avers he will not comply with North Dakota law. See Doc. No. 17, pp. 10 ("Mr. Splonskowski's intent to choose federal law and disregard state law includes the specific facts (or acts) necessary to establish the injury he justifiably fears—namely, a plausible violation of a criminal statute, or at minimum, repercussions stemming from failure to follow Director White's training.").

[¶5]     Because of this understanding, Splonskowski has filed a Complaint against North Dakota Election Director Erika White ("White"). Doc. No. 1 at ¶ 12. White is sued in her official capacity and is responsible for administering elections in North Dakota. Id. The Court previously found Splonskowski brought this action in his official capacity as Burleigh County Auditor.[1] Doc. No. 22.

## DISCUSSION

[¶6]     White argues Splonskowski lacks standing to bring this lawsuit. In making this claim, White contends (1) Splonskowski's risk of criminal prosecution is speculative and does not constitute an injury in fact; (2) Splonskowski cannot show standing based on a theory of pre-enforcement review; (3) an alleged conflict between state and federal law does not create an injury; (4) Splonskowski cannot show White, as State Elections Director, would cause any injury to Splonskowski; and (5) Splonskowski cannot show redressability.

[¶7]     Splonskowski disagrees with White, arguing he has standing for several reasons. First, Splonskowski claims his risk of injury—potential criminal prosecution if he fails to abide by North Dakota election law—is sufficient to establish pre-enforcement review. Second, he argues White is the direct cause of his potential future injury. Third, Splonskowski contends he adequately pleads redressability because he seeks both a declaration the North Dakota law is contrary to federal law and injunctive relief to prevent White from informing Splonskowski of his duties to

---

[1] The Court reiterates its concern with Splonskowski bringing this action without the approval of the Burleigh County Commission. See Doc. No. 22. As previously stated, it appears to this Court North Dakota law requires permission or authorization by the County Commission for a county official to commence a lawsuit of this sort. See id. This analysis, however, is moot because Splonskowski fails to establish the traditional elements of standing as required for this Court to assert subject matter jurisdiction over the Complaint, as discussed in more detail below.

count ballots under North Dakota law. Fourth, Splonskowski claims he has oath-of-office standing because he swore an oath to uphold and defend the United States Constitution.

[¶8]    In reply, White points out Splonskowski misconstrues the law governing pre-enforcement review because such review does not apply when the statute being enforced is different from the statute being challenged. White also argues Splonskowski fails to establish a constitutional interest at play in this case. Finally, White reiterates her arguments regarding Splonskowski failing to show causation and redressability. The Court agrees with White that Splonskowski lacks standing.

[¶9]    It has long been established that the Court's constitutional authority permits it only to hear actual cases or controversies. Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 37 (1976) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). The doctrine of standing to sue is "rooted in the traditional understanding of a case or controversy." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). Because Splonskowski seeks federal jurisdiction, he must establish he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). This standard "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. In making this determination, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021). At the pleading stage, the Complaint must contain clear allegations of facts that demonstrate each element. Warth v. Seldin, 422 U.S. 490, 518 (1975); Spokeo, 578 U.S.

at 338. Splonskowski has failed to establish the injury in fact and causation elements of standing and has failed to show he has "oath-of-office" standing.

### I. Injury in Fact

[¶10]   To establish an injury in fact, the Complaint must allege facts that show the injury is (1) concrete and particularized and (2) actual and imminent as opposed to hypothetical or conjectural. Lujan, 504 U.S. at 560. The injury must be "the actual or imminent invasion of a concrete and particularized legal interest." Kuehl v. Sellner, 887 F.3d 845, 850 (8th Cir. 2018) (quoting Sierra Club v. Kimbell, 623 F.3d 549, 556 (8th Cir. 2010)). It is possible future injury may constitute injury in fact. In re SuperValu, Inc., 870 F.3d 763, 768-69 (8th Cir. 2017). In such a case, "the plaintiff must demonstrate that 'the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur."' Id. (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting in turn Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013))).

[¶11]   Splonskowski contends he has alleged sufficient facts to establish injury in fact because he has satisfied the requirements of pre-enforcement review. The Court disagrees. Pre-enforcement suits are permissible in limited circumstances when there are allegations of "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Susan B. Anthony List, 573 U.S. at 160 (quoting Babbit v. Farm Workers, 442 U.S. 289, 298 (1979)). When challenging a criminal statute, a party does not need to be exposed to arrest or prosecution before bringing a claim against it. St. Paul Area Chamber of Commerce v. Gaertner, 439 F.3d 481, 485 (8th Cir. 2006).

[¶12]   Splonskowski is not entitled to pre-enforcement review standing for several reasons. First, he does not challenge the criminal statute under which he would be subject to criminal penalties. The Complaint expressly challenges the validity of N.D.C.C. chapters 16.1-07, 16.1-11.1, and

16.1-15, which establish North Dakota's ballot receipt and counting requirements. See Doc. No. 1, p. 9, ¶¶ A, B, C. The prohibitions on action, however, are found at N.D.C.C. section 16.1-01-12 and the criminal penalties are found at N.D.C.C. section 12.1-11-06 ("Any public servant who knowingly refuses to perform any duty imposed upon him by law is guilty of a class A misdemeanor."). Neither of these statutes are actually challenged by Splonskowski.

[¶13]   In the pre-enforcement context, this failure is fatal. Under Susan B. Anthony List, the threatened prosecution must be contained within the same statute proscribing the alleged conduct. Susan B. Anthony List, 573 U.S. at 160. Splonskowski is allegedly subject to criminal prosecution under a separate statute than the ones he claims conflict with federal election law. He is not subject to criminal prosecution under any of the statutes mandating his duties as a member of the canvassing board. See, e.g., Penkoski v. Bowser, 548 F.Supp.3d 12, 30 (D.D.C. 2021) ("[P]re-enforcement challenges are limited to where the threat of enforcement stems from the challenged law itself."); Kearns v. Cuomo, 415 F.Supp.3d 319, 329 (W.D.N.Y. 2019), aff'd, 981 F.3d 200 (2d Cir. 2020) ("A plaintiff asserting standing on [pre-enforcement] grounds necessarily cannot satisfy the essential requirement identified by the Supreme Court in Babbitt—that the plaintiff allege an intention to engage in a course of conduct proscribed by the challenged statute."). Accordingly, on this ground alone, Splonskowski lacks standing.[2]

[¶14]   The Complaint also fails to allege a constitutional interest. Under Susan B. Anthony List, the statute at issue must ostensibly prohibit the exercise of a specific constitutional right. 573 U.S. at 159. Apart from vague assertions of Splonskowski's "constitutional rights" being violated, he has failed to identify any specific constitutional provision or Amendment that will be violated if

---

[2] Splonskowski essentially concedes this omission, claiming "there is no requirement that challenged statute exclusively prescribe the plaintiff's course of conduct." Doc. No. 17, p. 11. Splonskowski provides no caselaw to support this contention and the Court could find none.

he does not get the relief he seeks. Indeed, the cases on which Splonskowski relies depend on a potential violation of a particular constitutional right, typically the First Amendment. For example, in Gaertner, 439 F.3d at 484, the appellants refrained from making political contributions out of fear they may be penalized under Minnesota law. They brought a claim for violation of their First Amendment rights to engage in political and campaign activities. Id. The Eighth Circuit held, "[t]he chilling of Appellants' First Amendment rights is also an injury that supports their standing to bring suit." Id. at 487.

[¶15]   In Animal Legal Defense Fund v. Vaught, 8 F.4th 714, (8th Cir. 2021), "[t]he complaint sought an order that would prevent [the defendants] from bringing a civil suit against plaintiffs under an Arkansas statute." Id. at 717. The statute, the plaintiffs argued, violated their rights to free speech under the First Amendment. Id. The Eighth Circuit found the complaint adequately alleged the standing elements, holding "[the] conduct is arguably affected with a constitutional interest, because 'the creation and dissemination of information are speech within the meaning of the First Amendment.'" Id. at 718 (quoting Sorrell v. IMS Health Inc., 564 U.S. 552, 570 (2011)).

[¶16]   The Complaint contains only vague allegations of Splonskowski's constitutional rights being violated and fails to allege with specificity the precise constitutional provisions Splonskowski would be required to violate if he enforced North Dakota law. Accordingly, the claims are not "arguably affected with a constitutional interest." See Susan B. Anthony List, 573 U.S. at 160 (pre-enforcement standing permitted only when the claims are "arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution

thereunder."). Splonskowski has not made an argument his constitutional rights have or will be violated.[3] This defeats his claim for standing.

**II. Causation**

[¶17]   Splonskowski argues the Complaint establishes the purported injury (potential criminal prosecution) and it is fairly traceable to White's conduct. According to Splonskowski, White is responsible for administering North Dakota election law and provide training to Splonskowski regarding North Dakota's requirements because her training has "legal significance." White argues Splonskowski fails to address the fact that White's training cannot cause Splonskowski harm because (1) Splonskowski has determined North Dakota's election law contradicts federal election law[4] and (2) Splonskowski has already declared he will not abide by North Dakota's laws.

[¶18]   To establish causation, Splonskowski must show his alleged injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Agred Foundation v. United States Army Corps of Engineers, 3 F.4th 1069, 1073 (8th Cir. 2021) (quoting Lujan, 504 U.S. at 560) (quotation marks omitted)). The connection between the action of the defendant to the purported injury of the plaintiff must be

---

[3] But Splonskowski's proposed conduct may impinge upon the voting rights of members of the United States military and United States citizens living abroad. Technically, the Complaint does not challenge the North Dakota Century Code provision authorizing ballot receipts from military and overseas citizens (N.D.C.C. §§ 16.1-07-24 and 16.1-07-26). See Doc. No. 19, p. 10. If given the relief he asks for here—that is, invalidation of North Dakota's general absentee ballot statutes—the same reasoning could be utilized against overseas citizens and members of the United States military's rights to vote. This, indeed, is a concerning position for an elected official to take.

[4] The Court notes the unusual steps taken by Splonskowski in initiating this matter. He should have asked his local State's Attorney for an opinion regarding the alleged conflict between North Dakota and Federal election law. See N.D.C.C. § 11-16-01(1)(i) (providing the local State's Attorney must "[g]ive, when requested and without fee, the state's attorney's opinion in writing to the county, district, township, and school district officers on matters relating to the duties of their respective offices."). If he really believed there was a conflict, he should have sought counsel from the State's Attorney rather than filing the instant lawsuit with the help of independent legal counsel.

sufficiently direct and not "overly attenuated." Agreed Foundation, 3 F.4th at 1069 (quoting Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 47 (1st Cir. 2020)).

[¶19]   Splonskowski relies on Worth v. Harrington to support his claim for causation. In Worth, the court found the Minnesota Commissioner of Public Safety was a proper defendant for plaintiff's claim for declaratory and injunctive relief against a Minnesota statute that placed age limits on permits to publicly carry a firearm. ___ F. Supp. 3d ___, 2023 WL 2745673, *20 (D. Minn. March 31, 2023). The Minnesota Statute, however, mandated the Commissioner to facilitate the age-restricted permit application process by creating and promulgating application forms, among other duties. Id.

[¶20]   Here, White is not required to do anything by statute. White concedes she informs people of North Dakota's election law requirements. But she is not statutorily mandated to ensure the ballot receipt deadlines in the manner the Commissioner was in Worth. Indeed, White is not a department head. She is not the Secretary of State. She is an employee tasked with informing Splonskowski of his legal requirements on the election board. Even if White were statutorily required to provide such training, as discussed above, her trainings do not cause the alleged injury because, among other reasons, Splonskowski has already decided to violate North Dakota law.

[¶21]   Assuming White's training has "legal significance," as Splonskowski contends, Splonskowski has essentially conceded it is meaningless. If the Court were to enjoin White from providing election law training as Splonskowski asks, it would not make a difference. Whether she acts according to her duties or not, Splonskowski states he will violate North Dakota law. The only cause for his potential injury is himself because he states he will violate North Dakota election law. This is deeply concerning to the Court that an elected official openly advocates for violating the law he was elected to enforce because he has independently concluded it contradicts federal

law. Another North Dakota official may have to take action against Splonskowski under the circumstances, but that official is not White. Indeed any potential injury Splonskowski will face would most likely be caused by the Burleigh County State's Attorney who is charged with prosecuting violations of North Dakota's criminal laws.[5] N.D.C.C. § 11-16-01(1)(a) (The state's attorney is the public prosecutor, and shall: a. Attend the district court and conduct on behalf of the state all prosecutions for public offenses."). White has no authority to bring such an enforcement action and the Burleigh County State's Attorney is not before the Court. See Agred Foundation, 3 F.4th at 1073 (injury cannot be "the result of the independent action of some third party not before the court").

[¶22]  In sum, White is not a potential cause for Splonskowski's alleged injuries because she has no enforcement authority. She cannot bring a criminal action against Splonskowski. Her role is simply educational, not prosecutorial. Even assuming he has alleged an adequate injury, Splonskowski fails to allege adequate causation.

### III. Oath of Office Standing

[¶23]  Splonskowski also argues he has "oath-of-office" standing. Splonskowski relies on Bd. of Educ. v. Allen, 392 U.S. 236, 241, n.5 (1968), which noted:

> Appellees do not challenge the standing of appellants to press their claim in this Court. Appellants have taken an oath to support the United States Constitution. Believing s 701 to be unconstitutional, they are in the position of having to choose between violating their oath and taking a step—refusal to comply with s 701—that would likely bring their expulsion from office and also a reduction in state funds

---

[5] As noted above, Splonskowski should have posed the question presented in this lawsuit to his local State's Attorney. He may wish to do so before the next election as it may avoid his potential prosecution under N.D.C.C. § 12.1-11-06 ("Any public servant who knowingly refuses to perform any duty imposed upon him by law is guilty of a class A misdemeanor.") or removal from office under N.D.C.C. § 44-11-01 (providing the governor of North Dakota authority to remove county officials, including county auditors, "whenever it appears to the governor by a preponderance of the evidence after a hearing as provided in this chapter, that the officer has been guilty of misconduct, malfeasance, crime in office, [or] neglect of duty in office.").

for their school districts. There can be no doubt that appellants thus have a "personal stake in the outcome" of this litigation. Baker v. Carr, 369 U.S. 186, 204 (1962).

There was no more discussion of standing in Allen. See id.

[¶24] Allen is inapplicable here. The Complaint claims Splonskowski's oath required him to "solemnly swear" to "support the Constitution of the United States and the Constitution of the State of North Dakota." Doc. No. 1, ¶ 43. As a matter of law, this oath is incorrect. As an election board official, he would take the following oath:

> I do solemnly swear (or affirm as the case may be), that I will perform the duties of inspector, judge, or clerk (as the case may be) according to law and to the best of my ability, and that I will studiously endeavor to prevent fraud, deceit, and abuse in conducting the same.

N.D.C.C. § 16.1-05-02(3). The oath of office Splonskowski would take as an election board official is different than the one envisioned by the Court in Allen. Splonskowski's oath does not require him to uphold the United States Constitution. Id. It simply requires him to perform his duties as a North Dakota election official to the best of his ability. Id. Based upon this oath, he is not subject to the same conundrum the plaintiffs in Allen faced. Splonskowski is also not conflicted by the controversy he posits in this lawsuit.

[¶25] In addition, Splonskowski has failed to show his injuries have a constitutional interest as required under Susan B. Anthony List. In Allen, the plaintiffs were required to either violate their oath or violate the constitution. Splonskowski does not allege following North Dakota law will violate his constitutional rights. Rather, Splonskowski specifically claims North Dakota's election laws should be found to violate 28 U.S.C. § 2201, which is not a constitutional provision. Accordingly, Allen is inapplicable in this case. See Rodearmel v. Clinton, 666 F.Supp.2d 123, 130 (D.D.C. 2009) (finding Allen is applicable when a pleading fails to allege the conduct violates a specific constitutional provision).


- 12 -

[¶26]   Accordingly, <u>Allen</u> is inapplicable to this case and Splonskowski has failed to establish "oath-of-office" standing.

## CONCLUSION

[¶27]   The Court has considered the remaining arguments relating to standing and finds they are unnecessary to determine Splonskowski lacks standing. Accordingly, for the reasons set forth above, White's Motion to Dismiss for Lack of Jurisdiction is **GRANTED**. The Complaint is **DISMISSED**. Based upon this, White's Motion to Dismiss for Failure to State a Claim and the Motion to Intervene are **MOOT**.

[¶28]   **IT IS SO ORDERED.**

DATED February 2, 2024.

_____
Daniel M. Traynor, District Judge
United States District Court